**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

STEPHEN ZUKOWSKI,

                                        Plaintiff,          8:16-CV-1537
                                                            (CFH)

               v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,


                                        Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

Schneider & Palcsik                     MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901
Attorneys for Plaintiff

Social Security Administration          HEETANO SHAMSOONDAR, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant

**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER[1]

        Plaintiff Stephen Zukowski brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner

or "defendant") denying his applications for supplemental security income benefits

_____

        [1]  Plaintiff's counsel sued as defendant Carolyn Colvin, Commissioner of Social Security.  The
Clerk of the Court is directed to update the caption and docket to reflect the defendant as Nancy A.
Berryhill, Acting Commissioner of Social Security.

("SSI") and disability insurance benefits.  Dkt. No. 1 ("Compl.").  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  Dkt. Nos. 11, 18.  For the following reasons, the determination of the Commissioner is affirmed, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.[2]

## I.  Background

Plaintiff, born on June 16, 1967, graduated from high school and completed some college credits.  T 41-43.[3]  Plaintiff lives with his fiancée in a home owned by his parents.  Id. at 42.  Plaintiff last worked in 2012 doing road construction.  Id. at 43.  He was "let go" from this job.  Id.  Before that, plaintiff worked as a firefighter for eleven years.  Id.  On June 18, 2013, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income.  Id. at 131-32; 133-38.  These applications were denied initially on October 3, 2013.  Id. at 58-87.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on December 13, 2013, and a hearing was held before ALJ Carl E. Stephan on March 17, 2015.  Id. at 95-96, 38-57.  The ALJ determined that plaintiff was not disabled.  Id. at 14-37.  Plaintiff's timely request for review by the Appeals Council was

---

[2]    Parties consented to review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 5.

[3]    References to the administrative transcript will be cited as "T."  The Court will cite to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

denied, making the ALJ's findings the final determination of the Commissioner.  Id. at 12-13; 1-5.  Plaintiff commenced this action on December 27, 2016.  Dkt. No. 1 ("Compl.").

## II. Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude* otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original)(internal quotation marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

### B.  Determination of Disability[4]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory

---

[4]  Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to

5

establish each of the first four steps.  See DeChirico v. Callahan,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

When a claimant alleges a mental impairment, the ALJ is required to engage in a "special technique" at step two of the sequential analysis, set forth in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e), 416.920a(b)-(e).  See Showers v. Colvin, 13-CV-1147 (GLS/ESH), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015) (citing Kohler v. Astrue, 546 F.3d 250, 265-66 (2d Cir. 2008).  This technique "helps administrative judges determine at Step 2 of the sequential evaluation whether claimants have medically-determinable mental impairments and whether such impairments are severe." Showers, 2015 WL 1383819, at *4.  Thus, under this technique, an ALJ is to assess the "functional effects of mental impairments . . . . Administrative law judges assessing residual functional capacity 'cannot simply rely on the limitations articulated in the severity analysis . . . , but must instead provide a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." Id. (quoting Ladue v. Astrue, No. 12-CV-600 (GLS), 2013 WL 421508, at *3 n.2 (N.D.N.Y. Feb. 1, 2013) (additional internal quotation marks and emphasis omitted).

An ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on his or her "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c).  The

ALJ must assess the plaintiff's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence, and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ must "rate" the functional degree of limitation in each of these four areas as "[n]one, mild, moderate, marked [or] extreme." Id. §§ 404.1520a(c)(4), 416.920a(c)(4).  If the ALJ finds the degree of limitation in each of the first three areas to be "mild" or better and identifies no episodes of decompensation, the ALJ "will generally conclude" that the plaintiff's impairment is "not severe." Id. § 404.1520a(d)(1).  Where the plaintiff's mental impairment is "severe," the ALJ must "determine if it meets or is equivalent in severity to a listed mental disorder." Id. § 404.1520a(d)(2). "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408 (quoting 20 C.F.R. § 404.1520a(d)(2)).

Where a claimant demonstrates alcohol and/or substance abuse problems, the ALJ must assess whether the substance abuse disorder is a "contributing factor" material to the determination of disability.  See 42 U.S.C. §§ 423(d)(2)(c), 1382a(3)(J); SSR 13-2p, 2013 WL 621536.  This is because the SSA provides that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addition would be a contributing factor material to the Commissioner's determination that the individual is disabled." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (citing 42 U.S.C. § 1392(c)(a)(3)(J)).  Thus, if the ALJ finds that the claimant is disabled under the standard sequential evaluation analysis, and there is medical evidence of the plaintiff's drug or alcohol use disorder, the ALJ must then determine whether he would still find

the plaintiff disabled if he stopped using drugs or alcohol.  See DiBenedetto v. Colvin, No. 5:12-CV-1528, 2014 WL 1154093, at *2 (N.D.N.Y. Mar. 21, 2014).  In so assessing, the ALJ must determine which, if any, of the claimant's limitations would remain if the claimant were to stop the drug or alcohol use and if any of the remaining limitations would render the claimant disabled.  See 20 C.F.R §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  As part of his burden of demonstrating disability, the plaintiff must show that his drug addiction or alcoholism is not material to his disability. See Cage, 692 F.3d at 123-25.

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037,

1041 (2d Cir. 1984).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that

plaintiff had not engaged in substantial gainful activity since August 1, 2012, the alleged

onset date.  T 20.  The ALJ found at step two that plaintiff had the severe impairments

of bipolar disorder, substance-induced mood disorder, and alcohol dependence.  Id.  At

step three, the ALJ determined that plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 22.  The ALJ then

concluded that,

> based upon all of the impairments, including the substance
> use disorder, the claimant has the residual functional
> capacity to perform a full range of work at all exertional
> levels, but with the following non-exertional limitations: an
> ability to understand and execute simple work-related
> instructions occasionally; an ability to interact with the public
> occasionally; an ability to interact with co-workers and
> supervisors less than occasionally; and an inability to adapt
> to changes in the workplace or workplace tasks.

Id. at 24.

At step four, the ALJ determined that plaintiff was unable to perform past

relevant work.  Id.  Considering plaintiff's RFC, age, education, and work experience,

together with the Medical-Vocational Guidelines, the ALJ further concluded that there

were "no jobs that exist in significant numbers in the national economy that plaintiff can

perform." Id.  Thus, the ALJ performed an analysis whether, "if claimant stopped the

substance abuse, the remaining limitations would cause more than a minimal impact on

the claimant's ability to perform basic work activities." Id. at 26.

Under this secondary analysis, the ALJ concluded that if plaintiff stopped

abusing alcohol, "the remaining limitations would not meet or medically equal the

criteria of listing 12.04." T at 26.  The ALJ next determined that if plaintiff stopped

abusing alcohol, he would

> have the residual functional capacity to perform a full range
> of work at all exertional levels, but with the following non-
> exertional limitations: the ability to understand and execute
> simple routine tasks; the ability to interact with the public, co-
> workers and supervisors on a regular routine basis; and the
> ability to accept changes to the workplace and workplace
> tasks occasionally.

Id. at 27.  Were plaintiff to stop abusing alcohol, the ALJ determined that plaintiff "would

be able to perform past relevant work as a road construction worker" as it "does not

require the performance of work-related activities precluded by the residual functional

capacity the claimant would have if he stopped the substance use." Id. at 41.  Thus,

the ALJ concluded that plaintiff's substance abuse was "a contributing factor material to

the determination of disability, because the claimant would not be disabled if he

stopped the substance use." Id.  As the ALJ concluded as such, he found that plaintiff

has not been under a disability within the meaning of the Social Security Act from the

alleged onset date to the date of the decision. Id.

## D.  Arguments

10

Plaintiff argues that the ALJ erred in (1) failing to accord sufficient weight to plaintiff's treating providers in violation of the treating physician rule, (2) determining that plaintiff's alcohol use was material to the determination of disability, and (3) concluding that plaintiff's testimony was not credible.  Dkt. No. 11.  The Commissioner argues that the ALJ's determination was based on correctly-applied standards and is supported by substantial evidence.  Dkt. No. 18.

### 1.  Did the ALJ Properly Weigh the Opinion Evidence?

Plaintiff argues that the ALJ "erroneously rejected the opinions of treating physicians Dr. Sleszynski and Dr. Rigeuer that Mr. Zukowski was disabled by his mental illness (and that alcohol dependence was not a material factor)."  Dkt. No. 11 at 32. Further, plaintiff contends that the ALJ did not give "sufficient weight to the findings and conclusions of Drs. Kim, Ghaemi, and Lutinski"; "long time treating therapist David Canton"; and "treating therapists Paul LaMora and Kathy Sajor and prescribing nurse practitioner Elnora Mills."  Id.  Plaintiff additionally argues, in a footnote, that the Appeals Council erred "by not explaining what weight it gave to Dr. Keith's retrospective opinions regarding Mr. Zukowski's mental impairments."  Id.  The Commissioner contends that the ALJ properly evaluated the medical opinion evidence.  Dkt. No. 18 at 7.

Generally, an ALJ is to give the opinion of a treating physician controlling weight as to the nature and severity of a claimant's impairments as long as the opinion "'is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the claimant's] case record.'"

Foxman v. Barnhart, 157 F. App'x 344, 346 (2d Cir. 2005) (summary order) (quoting 20

C.F.R. § 404.1527(d)(2)); SSR 96-2p, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions, 1996 WL 374188, at *1-2 (SSA July 2, 1996).  As

the Second Circuit has made clear:

> "Although the treating physician rule generally requires
> deference to the medical opinion of a claimant's treating
> physician, the opinion of the treating physician is not
> afforded controlling weight where . . . the treating physician
> issued opinions that are not consistent with other substantial
> evidence in the record, such as the opinions of other
> medical experts."

Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) (quoting

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

Where controlling weight is not afforded, an ALJ is to consider certain "factors" in

assessing the weight to give to the treating physician's opinion, including: (1) "the

frequency of the examination and the length, nature and extent of the treatment

relationship"; (2) "the evidence in support of the treating physician's opinion"; (3) "the

consistency of the opinion with the record as a whole"; (4) "whether the opinion is from

a specialist"; and (5) "other factors brought to the Social Security Administration's

attention that tend to support or contradict the opinion."  Halloran, 362 F.3d at 32

(quoting 20 C.F.R. § 404.1527(d)(4)).  However, an ALJ is not required to list and

discuss explicitly each factor or explain the weight given, and courts generally will not

remand where "'the substance of the treating physician rule was not traversed.'"

Kennedy, 343 F. App'x at 721 (quoting Halloran, 362 F.3d at 32)); Britt v. Astrue, 486 F.

App'x 161, 164 (2d Cir. 2012)) (summary order).  Although the Second Circuit "do[es] not fail to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion," remand for reconsideration may be unnecessary where "'application of the correct legal principles to the record could lead [only to the same] conclusion.'"  Brogan-Dawley v. Astrue, 484 F. App'x 632, 633 (2d Cir. 2012) (summary order) (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); Halloran, 362 F.3d at 33.  An ALJ is to discuss not only the inconsistencies between the treating physician and record evidence but also its consistency with other evidence.  See Foxman, 157 F. App'x at 347.  The question before the district court is not whether it would resolve the conflicting evidence in the same way as the Commissioner, but whether the Commissioner's resolution of the conflict was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).

The opinions of non-acceptable sources,[5] or "other sources," "may be used 'to show the severity of the individual's impairments(s) and how it affects the individual's ability to function.'"  Beckers v. Colvin, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014) (quoting SSR 06-3p, 2006 WL 2329939, at *3, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims (S.S.A. Aug. 9, 2006)).  "SSR 06-03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would

---

[5] "Medical sources who are not 'acceptable medical sources[ ]' [include] nurse practitioners, physician assistants, licensed clinical social workers, chiropractors, audiologists, and therapists."  SSR 06-3p, 2006 WL 2329939, at *2.

be used to analyze the opinion of an acceptable medical source." Id. (citing SSR 06-3p). Indeed, although such sources are not considered "medical opinions" under the regulations and, thus, are not entitled to enhanced weight, "these assessments are nevertheless 'important and should be evaluated on key issues such as impairment severity and functional effects.'" Paquette v. Colvin, 7:12-CV-1470 (TJM/VEB), 2014 WL 636343, at *6 (N.D.N.Y. Feb. 18, 2014) (quoting SSR 06-03p, 2006 WL 2329939, at *3). The Second Circuit has made clear that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995).

### a. Treating Physicians

### i. Dr. Slesynski

The ALJ concluded that, "[d]espite allegations of disabling symptomology," there exists "limited substantive support." T 28. The ALJ reviewed reports from Dr. Slesynski. Dr. Slesynski completed a medical source statement that appears to be dated September 16, 2015, wherein he concluded that plaintiff had (1) moderate limitations in carrying out simple instructions; (2) marked limitations in understanding and remembering simple instructions and making judgments on complex work-related decisions; and (3) extreme limitations in making judgments on simple-work related decisions, understanding and remembering complex instructions, and carrying out

complex instructions.[6]  Id. at 860.  Dr. Slesynski checked "no" next to the question inquiring whether plaintiff's "ability to interact appropriately with supervision, coworkers, and the public, as well as respond to changes in the routine work setting" was affected by his impairments.  Id. at 861.  However, Dr. Slesynski indicated that plaintiff had extreme limitations in his abilities to interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting.  Id.  When asked to identify the factors that support his above assessment, Dr. Slesynski wrote "recent valproic acid toxicity (7/17/15)."[7]  Id.  When asked whether "any other capabilities" were affected by the impairment, Dr. Slesynski provided, "multiple psychiatric hospitalizations, stabilized on Lithium, Depakote, Latuda, Seroquel, and Klonopin."  Id.  He concluded that plaintiff could not manage benefits in his best interests.  Id. at 862.

In assessing Dr. Sleszynski's opinion, the ALJ noted that, "[w]hile it is likely that the claimant experiences considerable deficits while abusing alcohol, it does not appear that he experiences such deficits when sober."  T at 30.  The ALJ noted Dr. Sleszynski's April 2015 treatment note wherein he reported that plaintiff was doing well and his "mood was euthymic and reflective," with "relevant and coherent" thinking and "no abnormal ideation."  Id. (citing Exh. 33F).  The ALJ similarly pointed out Dr.

---

[6]  Dr. Slesynski did not explain why he believed plaintiff had extreme limitations in his ability to make judgments on simple work-related decisions but marked limitations, which is defined as less severe than extreme, in his ability to make judgments on complex work-related decisions.  T 860.

[7]  Valproic Acid Toxicity appears to refer to an overdose of valproate/valproic acid, which is a medication used to treat seizure disorders and bipolar disorder.  See Valproic Acid, *available at*: https://www.mayoclinic.org/drugs-supplements/valproic-acid-oral-route/description/drg-20072931 (last visited Mar. 5, 2018).  One such medication is Depakote.  Id.

Sleszynski's May 2015 treatment note indicating that plaintiff was "doing well." Id. Thus, the ALJ concluded that there existed "no basis for the marked to extreme restrictions identified by Dr. Sleszynski," and reasoned that his opinion is not "of significant probative value." Id.

### ii.  Joel Rigueur, M.D.

Dr. Joel Rigueur, M.D., a psychiatrist, began treating plaintiff in February 2015. He treated plaintiff on two occasions prior to completing the questionnaire. T 794. One of these two treatments occurred on the date he completed the questionnaire. Id. Dr. Rigueur opined that plaintiff had (1) moderate limitations in his ability to carry out simple instructions and make judgments on complex work-related decisions; and (2) marked limitations in understanding and remembering simple instructions, making judgments on simple work-related decisions, and understanding, remembering, and carrying out complex instructions. Id. Dr. Rigueur did not provide "factors" – "the particular medical signs, laboratory findings, or other factors described above – that supported his assessment. Id. He checked a box indicating that plaintiff's ability to interact appropriately with coworkers and the public and respond to changes in the routine work setting was not affected by his impairments, but also checked boxes indicating that plaintiff had extreme limitations in his ability to interact appropriately with the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. Id. at 796. Dr. Rigueur did not identify the "factors" that supported his assessment. Id. Dr. Rigueur also provided that plaintiff "is a rapid

cycling Bipolar who has had multiple psychiatric hospitalizations but has been stabilized on Lithium but he had [illegible] with Lithium in June and had kidney failure." Id. Dr. Rigueur did not answer a question which asked "[i]f the claimant's impairment(s) include alcohol and/or substance abuse, do these impairments contribute to any of the claimant's limitations as set forth above?  If so, please identify and explain what changes you would make to your answers if the claimant was totally abstinent from alcohol and/or substance abuse."  Id.  Dr. Rigueur opined that plaintiff could not manage his own benefits in his own best interests.  Id. at 797.

In assessing Dr. Rigueur's opinion, the ALJ noted that on March 26, 2015, the same day Dr. Rigueur completed his medical source statement, plaintiff was "spontaneous and oriented" with "organized and relevant thoughts" and "good insight into his illness." Id. at 30.  The ALJ noted that "no documentation has been provided by Dr. Rigueur, which would support the limitations he identified." Id.  Thus, the ALJ concluded that his "clinical statement is grossly at odds with those of Dr. Efobi, Dr. Hoskin and Dr. Hartman," and assigned Dr. Rigueur's medical source statement "no probative value." Id.

### iii.  Stanley Poreba, MD

Dr. Poreba noted on September 9, 2014 that plaintiff's "[m]ental status is little changed over time with the patient continuing to minimize his alcohol dependence and in fact today exhibiting outright denial: [']I absolutely do not believe it is a problem in any way . . . ['], after referring to 'delusions and hallucinations' he's been having."  T 491.

Dr. Poreba observed that "[w]hat the patient is actually describing are moments of depersonalization, previously noted, lapses in memory and/or recollections of other relationships he was in . . . Previously referred to as jealousy ruminations." Id.

On June 9, 2014, plaintiff reported to Dr. Poreba that he "think[s he is] entering a depressive cycle." T 492. Dr. Poreba observed that plaintiff had good eye contact, good speech that was slow and spontaneous, and cooperative attitude. Id. His affect was "rather flat," and his mood "depressed." Id. He denied suicidal ideation or plans or "perceptual disturbances." Id. His "form of thinking shows a slow to normal stream and his associations are good" with "no pressuring or flight of ideas noted." Id. Plaintiff did not report major sleep or appetite disturbances. Id. As part of his plan for care, Dr. Poreba planned to "[h]elp motivate patient to abstain from alcohol, the most probable cause of his depressive mood." Id.

On March 10, 2014, plaintiff was neatly groomed, had "good speech" that was "spontaneous," and his attitude was "cooperative." T 493. His affect was "appropriate to mood euthymic." Id. Plaintiff's form of thinking "shows a slow stream with good associations however the patient complains of obsessive thinking during the day that his is not able to interrupt." Id. Plaintiff reported good sleep and appetite. Id. Plaintiff had an identical report on a January 10, 2014 visit. Id. at 494. On November 15, 2013, plaintiff's initial visit with Dr. Poreba, plaintiff had good eye contact, good speech that was spontaneous and soft spoken, and cooperative attitude. Id. at 495. Plaintiff's affect was "appropriate euthymic." Id. Plaintiff denied "suicidal or homicidal ideas or plan at [sic] this is perceptual disturbances." Id. Dr. Poreba noted that plaintiff's

"thinking shows a hesitant and/or deliberate stream with good associations" and he elicited no delusions.  Id.  Plaintiff reported good sleep and appetite.  Id.

In his decision, the ALJ noted that Dr. Poreba reported that plaintiff's "alcoholism was the most probable cause of the claimant's depression" and referenced plaintiff's September 2014 visit with Dr. Poreba wherein he stated that he did not believe his alcohol dependency was a problem.  T at 24.

### b. Consultative Examiners/Agency Experts

### i. Brett Hartman, Psy.D.

Plaintiff underwent a consultative psychiatric examination on September 20, 2013 with Brett Hartman, Psy.D.  T 315.  Plaintiff reported "a history of abusing alcohol as a form of self-medication."  Id. at 316.  Plaintiff reported drinking "about four to five times per week, averaging about four to six beers. "  Id.  Plaintiff further reported that his drinking was "'not a problem.'" Id. at 317.  Dr. Hartman assessed plaintiff to be "a cooperative, rather standoffish individual."  Id.[8] His speech was "fluent with a clear, yet somewhat monotonous and pressured manner of speaking."  Id.  Plaintiff's thought processes were coherent and goal directed, his affect restricted, his mood dysphoric, his sensorium clear, and he was alert and oriented x3.  Id.  Dr. Hartman assessed plaintiff's attention and concentration "to be generally in tact," and indicated that plaintiff "could do the counting, simple calculations, and serial 3s with minimal difficulty."  Id. at

---

[8]  Dr. Hartman noted that plaintiff "refused to undergo the medical evaluation at this office."  T 317.

318. Plaintiff's recent and remote memory skills were "mildly impaired." Id. Plaintiff could recall four of four objects immediately, and two of four objects after five minutes. Id. He could perform seven digits forward, and five backward. Id. Plaintiff's insight was fair, and his judgment was fair to poor. Id. Dr. Hartman concluded that plaintiff was able to follow and understand simple directions and perform simple tasks; has a fair ability to maintain attention and concentration and learn new tasks; has mild difficulty performing complex tasks independently; and mild difficulty in making appropriate decisions. Id. Dr. Hartman further concluded that plaintiff has mild difficulty in making appropriate decisions, and moderate difficulty relating adequately well with others and maintaining a regular schedule due to mood swings. Id. Plaintiff has "moderate difficulty dealing appropriately with the normal stressors of life." Id. Dr. Hartman's prognosis was fair to guarded "given the long-term nature of symptoms." Id.

The ALJ accorded Dr. Hartman's opinion "some weight." T 29. The ALJ noted Dr. Hartman's conclusion that plaintiff would have moderate difficulty relating to others, following a schedule, and tolerating stress and concluded that "this restriction is applicable, when the claimant is abusing alcohol." Id. However, the ALJ noted that, when sober, the claimant exhibits no more than mild limitations in these areas. Id.

### ii. Chukwuemeka Efobi, M.D., State Medical Expert

Dr. Chukwuemeka Efobi, M.D., a psychiatrist and state medical expert, performed an assessment of plaintiff's medical records. T 831. Dr. Efobi concluded that plaintiff had (1) no limitations on his ability to understand and remember simple

instructions; (2) mild limitations on his abilities to carry out simple instructions and make

judgments on simple, work-related decisions; (3) mild to moderate limitations on his

abilities to understand and remember complex instructions; (4) moderate to marked

limitations on his ability to carry out complex instructions and make judgments on

complex work-related decisions; and (5) moderate limitation in his ability to make

judgments in complex work-related decisions.  Id.  Dr. Efobi indicated that plaintiff

suffered mood disorder and "ETOH use Disorder - severe."[9]  Id.  Plaintiff would not be

able to manage his benefits due to "alcohol use disorder severe."  Id. at 832.  Dr. Efobi

concluded that plaintiff's ability to interact appropriately with the public was mildly

limited.  Id. at 833.  His abilities to interact appropriately with supervisors and coworkers

and to respond appropriately to usual work situations and changes in a routine work

setting were moderately limited.  Id.  Dr. Efobi based these conclusions on plaintiff's

"mood disorder" and "ETOH use disorder."  Id.

The ALJ noted Dr. Efobi's opinion that plaintiff's "alcohol abuse precipitated and

perpetuated the claimant's mood disorder" and that "claimant minimized the severity of

his alcohol abuse."  T 29.  The ALJ further noted that Dr. Efobi opined that plaintiff

could perform simple work.  Id.  The ALJ acknowledged Dr. Efobi's assessment that

plaintiff would have moderate difficulty engaging in social interactions, mild limitations

interacting with the public, and moderate limitations interacting with coworkers and

supervisors.  Id. at 23.  The ALJ determined that Dr. Efobi's "opinion is consistent with

---

[9]  ETOH is an acronym for ethyl alcohol and appears to be used here as short hand to describe alcohol use disorder.  See, e.g., Ethyl (ETOH) definition, STEDMAN'S MEDICAL DICTIONARY 675 (28th ed. 2006).

that of Dr. Hoskin, who examined the claimant during hospitalization" and "observed that the claimant did not present as particularly depressed or manic, noting that the possibility of secondary gain was present." Id. at 29. The ALJ further determined that Dr. Efobi's opinion "is also consistent, in part, with the report of Dr. Hartman, a consultative examiner." Id. Concluding that Dr. Efobi's opinion "is predicated upon a thorough review of the record, including reports from treating and examining sources alike," the ALJ accorded his opinion great weight. Id.

### c.  Plaintiff's Other Medical Providers

### i.  David Canton, LCSWR

David Canton, LCSWR, completed a Medical Source Statement dated March 23, 2015. T 791. Mr. Canton opined that plaintiff had marked limitations in his abilities to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Id. Mr. Canton indicated the "factors" he relied on in making the above assessments:

> [w]hile Steve can, on occasion, present clearly, his sx often emerge and inevitably impair his ability to function effectively. His preoccupation with his internal wold frequently makes him ineffective in external world. He has regular challenges with basic reality testing and can be very guarded, making detection of this quite challenging.

Id. Mr. Canton further opined that plaintiff had marked limitations in his abilities to

22

interact appropriately with the public, supervisors, and coworkers; and respond appropriately to usual work situations and to changes in a routine work setting.  Id. at 792.  In support of these assessments, Mr. Canton provided that "Steve has marked difficultly correctly interpreting communication & actions of others."  Id.  He further indicated that plaintiff "has great difficulty correctly interpreting other's [sic] intentions, etc."  Id.  Mr. Canton opined that plaintiff, "at times, exists within moderately delusional mental states.  In these times, he has difficulty knowing whether his delusions are real or not, i.e. believing he is a 'big time' gambler when he is nothing of the sort."  Id. Finally, Mr. Canton stated that plaintiff's "problems exist irrespective of any use of alcohol.  He does not now, nor has he ever used other recreational drugs."  Id.  Finally, he concluded that plaintiff could not manage his own benefits.  Id.

Mr. Canton completed a second medical source statement dated September 25, 2015.  T 860-66.  In an addendum written on the statement and dated December 2, 2015, Mr. Canton provided that his assessments and notes "are reflective of Stephen's clinical presentation now, as well as in the past since our first meeting on December 13, 2013 as described in item (5) remain accurate."  Id. at 866.  The second medical source statement dated September 24, 2015 and the addendum dated December 2, 2015 were not before the ALJ when he issued his decision.  Dkt. No. 37.  These documents were submitted to the Appeals Council and were made part of the record.  Dkt. No. 5.[10]

Mr. Canton concluded that plaintiff had moderate limitations in his ability to make

---

[10]  Plaintiff does not explicitly argue that the Appeals Council erred in failing to review the ALJ's decision based on Mr. Canton's September 25, 2015 and December 2, 2015 statements.  See Dkt. No. 11.

judgments on simple work-related decisions; and marked limitations in understanding and remembering simple instructions, making judgments on complex work-related decisions, and understanding, remembering, carrying out, and making judgments on complex work-related decisions.  T 864.  Mr. Canton attributed his answers to the fact that plaintiff's "mind is constantly obsessing about many other things" and that he "has had past problems at work because specific delusional thought processes were exploited by others severely enough that he was arrested and lost his job."  Id. at 867.  His judgment is markedly limited because "he has not adequately integrated and organized his experience in a reality-based manner" and he ""regularly misperceives his social experience."  Id.

Mr. Canton opined that plaintiff's ability to interact appropriately with supervision, coworkers, and the public, and responding to changes in the routine work setting were affected by his impairments.  T 865.  In referencing these limitations, Mr. Canton relied on plaintiff's experience twenty years ago when he opened a deli but shortly thereafter sold it "because he could not maintain his mental stability in any reasonable way."  Id. He could not interact with supervisors because "[i]n a manic state he becomes arrogant and haughty" and when depressed, "he becomes lethargic and indifferent making effective communication challenging."  Id.  Mr. Canton also referenced plaintiff's "problems with interpersonal boundaries."  Id.  Mr. Canton also indicated that one of plaintiff's medications causes him to become drowsy and his manic states also cause him to lose sleep, which would impact his ability to function in a work environment.  Id.

In an attachment to his medical source statement, Mr. Canton indicated that

plaintiff's alcohol use "is not a factor in his impairment" because "[h]e has abstained for periods with no improvement in symptoms.  A permanent and complete cessation of his use would in no way improve his odds of being able to work."  T 869.  Mr. Canton referenced an October 2, 2013 assessment from Champlain Valley Family Services which noted that they assessed plaintiff with "no recommendation for any level of substance abuse/chemical dependence treatment at this time."  Id. at 879.   Mr. Canton stated that plaintiff's "pattern of use since then has not worsened in any way" and that plaintiff " has never failed to fulfil his major role obligations because of his use of alcohol."  Id. at 870.

### d.  Whether the ALJ's Assessment of Opinion Evidence is Supported by Substantial Evidence

Plaintiff argues that the ALJ "erroneously rejected the opinions of treating psychiatrists Dr. Sleszynski and Dr. Rigueur that Mr. Zukowski was disabled by his mental illness (and that alcohol dependence was not a material factor)."  Dkt. No. 22 at 32.  He also argues that the ALJ "did not give sufficient weight to the findings and conclusions of Drs. Kim, Ghaemi, and Lutinski."  Id.  Finally, he contends that the ALJ failed to "give sufficient weight" to treating therapists Paul LaMora and Kathy Sajor and nurse practitioner Elnora Mills.[11]  More specifically, plaintiff argues[12] (1) that therapists

---

[11]  Plaintiff also contends that the ALJ erred in giving "controlling weight" to Dr. Poreba and "non-examining consultant Dr. Efobi."  Dkt. No. 11 at 33.  However, as plaintiff's objections to these arguments appear to be with their assessment of plaintiff's alcoholism and its materiality, these arguments will be addressed, infra, within the materiality section of this Memorandum-Decision and Order.

[12]  In his argument section of his brief, plaintiff does not provide pin cites to these medical records.  See Dkt. No. 11 at 32-33.

Paul LaMora and Kathy Sajor and treating nurse practitioner Elnora Mills "opined that

Mr. Zukowski suffered from bipolar disorder and had severe symptoms," and (2) that

"Mr. LaMora explicitly stated that he did not need further treatment for alcoholism."

Id. at 32-33.  The Court agrees with the Commissioner that the ALJ's assessment of the

medical opinions is supported by substantial evidence.  See Dkt. No. 18 at 7-14.

Addressing first Dr. Rigueur's opinion, as the Commissioner points out, Dr.

Rigueur's treatment notes are incongruent with the extreme limitations he opined.  Dkt.

No. 18 at 7.  Although Dr. Rigueur concluded that plaintiff had: (1) moderate restriction

in his ability to carry out simple instructions and make judgments on complex work-

related decisions; (2) marked limitations in understanding and remembering simple

instructions, making judgments on simple work-related decisions, understanding,

remembering, and carrying out complex instructions; (3) extreme limitations in his

abilities to interact appropriately with the public, supervisors, and coworkers; and

(4) extreme limitation in his ability to respond appropriately to usual work situations and

changes in a routine work setting, the treatment records do not support such significant

limitations.  Id. at 796.

At the March 26, 2015 appointment – which, as the Commissioner points out, is

the same day Dr. Rigueur completed his medical source statement – plaintiff

demonstrated good eye contact, intact recent and remote memory, organized and

relevant thought process, spontaneous and relevant speech, fairly good judgment, good

insight, no evidence of delusions/hallucinations, and was fully oriented.  T 857; Dkt. No.

18 at 8.  The ALJ noted that Dr. Rigueur provided "no documentation . . . which would

26

supper the limitations he identified" and that his "clinical examination of the claimant is inconsistent with the degree of functional limitation described by the medical source statement."  T 30.  This conclusion is clearly supported by the record just recounted by the Court.

Second, in considering the weight to accord to a treating physician's opinion, an ALJ is entitled to consider – indeed, he is directed to consider – the length of the treatment relationship and frequency of examination.  See 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  The ALJ properly accounted for the fact that, at the time he issued his medical source statement, Dr. Rigueur treated plaintiff on just two occasions, including the day of his evaluation.  Courts in this Circuit have held that when a doctor has seen the plaintiff on only one or two occasions, the doctor's opinion is not entitled to the weight of a treating physician because he "did not provide plaintiff with the type of ongoing medical treatment that would define them as a 'treating physician.'"  Bergeron v. Astrue, 09-CV-1219 (MAD), 2011 WL 6255372, at *8 (N.D.N.Y. Dec. 14, 2011) (citing George v. Bowen, 692 F. Supp. 215, 219 (S.D.N.Y. 1988) (noting that the doctor's opinion was properly accorded less weight because he saw the plaintiff twice) and Quinones v. Barnhart, 05 Civ. 579 (PKC), 2006 WL 2136245, at *7 (S.D.N.Y. Aug. 1, 2006) (holding that the treating doctor's opinion was properly accorded less weight when he saw plaintiff only once)); Balles v. Astrue, 3:11-CV-1386 (MAD), 2013 WL 252970, at *5 (N.D.N.Y. Jan. 23, 2013) (same); 20 CFR § 404.1527(c)(2)(I) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion").  Thus, in

addition to discounting the opinion as unsupported by his own clinical examination, the ALJ appropriately accounted for the fact that Dr. Rigueur had seen plaintiff on just two occasions at the time he rendered his opinion.

The ALJ also concluded that Dr. Rigueur's opinion is "grossly at odds with those of Dr. Efobi, Dr. Hoskin,[13] and Dr. Hartman." T 30. This conclusion is well supported by the record. As stated, where a consultative examiner or non-examining expert's opinion is well supported by the record, it can be entitled to controlling weight. See, e.g., Netter v. Astrue, 272 F. App'x 54, 55-56 (2d Cir. 2008) (summary order) (concluding that reports of consultative and/or non-examining physicians may override opinions of treating physicians, provided they are supported by substantial evidence in the record); 20 C.F.R. § 404.1527(e)(2) (ALJs must consider the findings of state agency medical consultants and other program physicians because they are highly qualified and are also experts in Social Security disability evaluations). The ALJ noted Dr. Hartman's conclusion that plaintiff "retained the ability to understand and execute simple tasks" but would have "moderate difficulty relating to others, following a scheduled [sic] and tolerating stress." T at 29. In reviewing Dr. Rigueur's opinions, the ALJ concluded that "this restriction is applicable, when the claimant is abusing alcohol," but "when sober, the claimant exhibits no more than mild limitations in these areas." Id. These conclusions supported by substantial evidence in the record. Insofar as plaintiff argues

---

[13]   Mark Hoskin, MD, examined plaintiff in February 2011, after he was psychiatrically hospitalized. T 20. As the ALJ noted, Dr. Hoskin observed that plaintiff did not present as "particularly depressed or manic," had fair mood and subdued affect, and no signs of suicidal ideation. Id. Dr. Hoskin "[r]aised the possibility of secondary gain from a diagnoses of bipolar affective disorder." Id. The ALJ also noted that plaintiff's GAF score at discharge was 65, which indicates mild symptoms. Id.

that the ALJ erred in according greater weight to the opinions of consultative examiner and non-examining expert than to Dr. Rigueur, because these opinions are supported by substantial evidence, his reliance is proper.  See 20 C.F.R. § 404.1527(e)(2); see Halloran, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of a treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.") (citing Venio, 312 F.3d at 588).

Similarly, Dr. Sleszynski concluded in a medical source statement that plaintiff had extreme limitations in his ability to interact with the public, coworkers, and supervisors, and marked to extreme limitations in his ability to remember instructions and make judgments on work-related decisions.  T 860.  However, as the ALJ noted, like Dr. Rigueur, many of Dr. Sleszynski's medical treatment notes indicate less severe symptoms.  Id. at 30.  The ALJ referenced that in May 2015, plaintiff reported that he was "doing well,"and that Dr. Slyszynski described plaintiff's mood as euthymic and reflective, and described plaintiff's thinking relevant and coherent with no abnormal ideation.  Id. (citing T at 854) .  Also on this visit, plaintiff reported his sleep to be normal, and Dr. Sleszynski noted that his affect was only "mildly constricted."  Id. at 855.  Dr. Sleszynski discontinued plaintiff's Depakote.  Id.  Although it is the case that plaintiff sometimes reported more severe symptoms to other doctors at Behavioral Health Services North (T 851, "not doing particularly well"), plaintiff has produced no records from either Dr. Sleszynski  or any other BHSN doctors to substantiate the

marked to extreme limitations Dr. Sleszynski opined.  See Cichocki v. Astrue, 534 F.

App'x 71, 75 (2d Cir. 2013) (holding that an ALJ may afford less than controlling weight

to a treating physician's medical source statement where the "medical source statement

conflict[s] with his own treatment notes[.]").  Accordingly, the ALJ articulated "good

reasons" for failing to afford the opinion greater weight, and did not err in concluding

that Dr. Sleszynski's medical source statement was entitled to no probative value.  Id. at

30; see Schaal, 134 F.3d 505.

Insofar as plaintiff contends that the ALJ erred in failing to give "sufficient weight"

to S. Nassir Ghaemi, M.D.'s opinion, Dkt. No. 11 at 32, as the Commissioner notes, Dr.

Ghaemi did not "provide[] a medical opinion as to Plaintiff's abilities."  Dkt. No. 18 at 11.

Further, the ALJ discussed Dr. Ghaemi''s records.  T 20-21.  The ALJ noted the

February 2012 report, wherein plaintiff reported to Dr. Ghaemi that he developed

"severe melancholia, resulting in a change in medication."  T at 20.  As the

Commissioner notes, plaintiff ceased treatment with Dr. Ghaemi six months before his

alleged onset date.  Dkt. No. 18 at 12 (citing T at 403).

Regardless, the ALJ explicitly discussed that in July 2012, Dr. Ghamei diagnosed

plaintiff with alcohol dependence and adjustment disorder and noted that plaintiff had

suicidal plans but no intent, and that in January 2012, Dr. Ghamei observed that plaintiff

was "mildly depressed," but that his thoughts were logical, and he had no suicidal

ideation.  T 20.  Thus, the ALJ appropriately considered these pre-onset date treatment

records, and plaintiff does not explain, nor does the record support, a conclusion that

Dr. Ghaemi's treatment records suggest more significant limitations.

Plaintiff also contends that the ALJ failed to give sufficient weight to Dr. Kim's opinion.  Dkt. No. 11 at 32.  However, plaintiff's argument is without force.  Although the ALJ did not assign a specific weight to Dr. Kim's opinions, it is noted that Dr. Kim does not provide a medical source statement or assessment of plaintiff's limitations; however, the ALJ did review Dr. Kim's treatment records in detail from July 2012 through May 2013.  T 21.   The ALJ observed that during an August 2012 examination, plaintiff "identified only minor difficulties with functioning."  Id.  In December 2012, Dr. Kim noted that plaintiff was "very calm and exhibited good eye contact" and his "[m]ood was stable and neutral."  id.  By plaintiff's April 2013 appointment, the ALJ noted that Dr. Kim observed plaintiff to be "well-rested and relaxed," and that his affect was "bright" and "full" in range.  Id.  In May 2013, plaintiff reported to Dr. Kim that the "absence of anxiety, agitation, blunting or constriction."  Id.  Even if the ALJ erred in failing to explicitly assign a weight to Dr. Kim's medical records, it would amount to harmless error, as the ALJ notes, and review of Dr. Kim's treatment records confirms, that Dr. Kim's treatment notes do not document significant symptoms or limitations.  See T at 21, 283 ("Despite what the patient's fiancé said, I believe that the patient is relatively stable regarding his mood symptoms and is more or less at his baseline."), 285 (noting medications were working, plaintiff doing well, reports that he sleeps too much and lacks motivation, appeared neatly groomed, "looked very well rested and appeared relaxed with good eye contact," mood flat, affect "bright and full in range", thought processes "organized and relevant, free of suicidal thoughts, free of hallucinations/delusions, speech "spontaneous but very under productive because

fiancé doing most of talking"), 286 (plaintiff was alert, clear headed, had good eye contact, demonstrated spontaneous speech, productive, mood better, affect better, calmer, at ease, fuller range, organized and relevant though process, no hallucinations/obsessions), 288 (plaintiff was well groomed, calm, good eye contact, speech normal, mood better, organized and relevant thought processes).  Thus, the ALJ properly considered Dr. Kim's treatment records and his failure to explicitly assign his review of Dr. Kim's records a certain level of weight is, at most, harmless error.

Plaintiff next contends that the ALJ failed to give "sufficient weight" to the "findings and conclusions" of Dr. Lutinski.  Dkt. No. 11 at 32.  However, Dr. Lutinski's treatment notes are almost entirely illegible and appear largely to be blood and/or urine test results and copies of reports from other practitioners.  See T 369-386, 629-60. There is nothing in his records that suggests that he formed an opinion about plaintiff's psychiatric symptoms or his alcohol use problems or an assessment of plaintiffs abilities or limitations.  See id.  As plaintiff points to no specific evidence from Dr. Lutinski that supports specific or greater limitations then those reached by the ALJ's RFC, and the undersigned cannot locate any such evidence in the record, the ALJ did not err in declining to explicitly discuss Dr. Lutinski's records or accord them "controlling weight."

Plaintiff also argues that the ALJ failed to grant "sufficient weight" to several treating providers who are not acceptable medical sources.  Dkt. No. 11 at 32.  The Court will first address plaintiff's argument that the ALJ erred in declining to accord "sufficient weight" to treating therapist David Canton.  Dkt. No. 11 at 32.  The ALJ reviewed Mr. Canton's medical notes and opinion in detail.  T 21.  The ALJ further

explained why he rejected Mr. Canton's opinion.  As the ALJ noted, Mr. Canton

concluded that plaintiff "'exists within moderately delusional mental states[,]'" but the

ALJ found "no evidence that the claimant had a history of delusional behavior" and that

"[t]he only time questionable thought processes were observed was during

hospitalization in the setting of alcohol abuse.  No other treating source has found that

the claimant suffers from delusions or psychosis."  Id. at 30.  Moreover, the ALJ

determined that, because Mr. Canton  "is not an appropriate medical source pursuant to

Social Security Ruling 06-03p" his opinion was not "of significant probative value."  Id.

The ALJ noted that plaintiff repeatedly reported use of alcohol throughout his treatment

with Mr. Canton.  Id. at 21.  He further noted in a December 2013 clinical examination,

plaintiff's mood was reported as neutral, and his affect constricted.  Id.

  The ALJ's assessment of Mr. Canton's opinion and records is supported by

substantial evidence.  Indeed, contrary to Mr. Canton's comments about delusions,

other treating sources who are acceptable medical sources – Dr. Poreba and Dr. Kim –

noted that, although plaintiff referred to having delusions or hallucinations, such

thoughts were more properly called "ruminations, "moments of depersonalization,"" or

"obsessive thoughts" and not "psychotic symptoms."  T 286 (Dr. Kim), 491 (Dr. Poreba).

Further, despite Mr. Canton's opinion that plaintiff's mental health issues were not

connected to his alcohol abuse, Mr. Canton's treatment notes repeatedly document that

plaintiff was still using alcohol throughout treatment, as do other medical providers who

treated plaintiff at or around the same time.[14]  The ALJ references these records.  T at 21, 28.  Finally, although Mr. Canton was plaintiff's treating therapist, Mr. Canton is not an acceptable medical source.  See SSR 06-03p, 2006 WL 2329939, at *2-3.  As the ALJ considered his opinions in detail, and explained his rationale for declining to accord these opinions weight, the ALJ's decision is based on substantial evidence.

Insofar as plaintiff contends that the ALJ erred in declining to accord significant weight to the opinions of Paul LaMora, Kathy Sajor, and Elnora Mills because "[a]ll of these sources opined that Mr. Zukowski suffered from bipolar disorder and had severe symptoms," Dkt. No. 11 at 32-33, the record does not contain any assessment of plaintiff's limitations from these providers.  Further, these sources, therapists and a nurse, are not acceptable medical sources.  SSR 06-03p, 2006 WL 2329939, at *2-3. Addressing first Mr. LaMora, plaintiff reports that Mr. LaMora stated that he did not need treatment for alcoholism; however, the record includes a letter dated October 2, 2013 from Mr. LaMora, Champlain Valley Family Center Outpatient Clinic Director to plaintiff's probation officer, wherein he indicated that plaintiff attended a psychoactive substance use assessment in March through June 2013 and the "primary result of this assessment was no recommendation for any level of substance use disorder treatment at this time." T 772, 873.[15]  Review of the Champlain Valley records from that time period indicate that plaintiff reported drinking only one to two glasses of wine on one to two occasions

---

[14]  Assessment of the materiality of plaintiff's alcohol use disorder is be addressed in the following section, and, thus, will not be recounted here.

[15]  Mr. LaMora sent plaintiff's counsel a nearly identical letter regarding the same assessment, though it is dated December 17, 2015.  T 873.

*per week*.  Id. at 774.  Thus, as plaintiff does not appear to have accurately reported his alcohol use, any conclusion Mr. LaMora made regarding plaintiff's need for alcohol abuse treatment would appear to have been based solely on plaintiff's self reporting. Thus, the ALJ did not err in declining to accord weight to this assessment.

Insofar as plaintiff argues that the ALJ erred in failing to accord significant weight to the opinion of Elnora Mills, NPP, there is no medical source statement from Ms. Mills, nor do her treatment notes suggest significant limitations.  On August 15, 2013, plaintiff reported to Ms. Mills a lack of energy and motivation, and problems with concentration and focus.  T at 497.  On September 20, 2013, Ms. Mills observed that plaintiff was "pleasant and cooperative" and that he reported that Adderall was "helpful" and that he "can focus and concentrate better and has more energy."  Id.  Plaintiff reported being able to sleep at night.  Id.  Thus, the ALJ did not err in failing to accord "significant weight" to these records, as they do not support a finding of greater limitations.[16] Further, as a non-acceptable source, Ms. Mills' opinion is not entitled to heightened weight.  See SSR 06-03p,  2006 WL 2329939, at *2-3.

Plaintiff next argues that the ALJ erred in declining to accord "significant weight" to Ms. Sajor, a treating mental health counselor.  Dkt. No. 11 at 32.  The record contains a form completed by Kathy Sajor for the New York State Office of Temporary and Disability assistance, dated May 17, 2013.  T 304-13.  Ms. Sajor indicated that plaintiff has significant impairment in judgment during manic phases.  Id. at 304.  As for

---

[16]  It does not appear that there are any additional records from Ms. Mills in the administrative transcript.

prognosis, Ms. Sajor indicated that plaintiff "will always struggle with bipolar disorder with significant dysfunction." Id. at 305. It appears Ms. Sajor saw plaintiff on a weekly basis from January 2011 through February 2012, bi-weekly/weekly basis from March 2012 through November 2012, and on a monthly basis from November 2012 through May 2013 for "couples therapy with partner dealing with his bipolar d/o sx & effect on relationship." Id. at 307-308. Ms. Sajor described plaintiff as "desperately wanting help, anxiety losing relationship, ashamed and embarrassed, get obsessive and [illegible] sometimes speech & thoughts were hesitant and delayed." Id. at 307. Ms. Sajor indicates that plaintiff's attention and concentration was "at times poor due to medication and sedation" and that he has "poor insight and judgment in worst moments." Id. at 309. As for his activities of daily living, Ms. Sajor reported that he is "at times barely functional, some difficulty with ADL's [sic]." Id. She indicated that his ability to function in a work setting is "not good - poor judgment impulsivity, anxiety rule the day when struggling." Id. She provided further that his sustained concentration/persistence is limited due to "poor concentration with depression or mania." Id. at 311. Ms. Sajor further provided that plaintiff "may have difficulty with authority." Id. She indicated, in response to plaintiff's ability to respond to changes in the work setting, that plaintiff "can work well independently when given free reign to do tasks on days when able to function." Id.

The ALJ does not address explicitly Ms. Sajor's opinion. The Court concludes that the ALJ's failure to address this opinion or accord it a specific degree of weight does not amount to reversible error. As Ms. Sajor is not an acceptable medical source,

she is not entitled to the presumption of controlling weight.  See SSR 06-03p,  2006 WL 2329939, at *2-3.  Although Ms. Sajor opines as to plaintiff's bipolar disorder, she clearly states that she provides couples counseling to help plaintiff and his partner cope with plaintiff's mental health symptoms; however, it does not appear that her primary treatment is for plaintiff's bipolar disorder.  T 308.  Further, although the record includes Ms. Sajor's assessment, there does not appear to be any of Ms. Sajor's treatment records in the administrative transcript.  Indeed, Ms. Sajor did not provide what medical treatment or clinical evidence she relied on in making her conclusions beyond her general reference to his diagnosis of bipolar disorder.  Further, Ms. Sajor appears to indicate that plaintiff's opined limitations are present only "when struggling," when he is in a depressive or manic state, or during his "worst moments."  Id. at 309-311.  Indeed, she qualified several of her statements regarding plaintiff's work abilities with words such as "at times," "sometimes," and "may," which also suggests that her opinions as to these limitations are specific to when plaintiff is in temporary manic or depressed states. Id.  It is not clear whether Ms. Sajor opines that these symptoms would interfere with plaintiff's ability to do work on a regular and continuing basis, as they appear qualified based on whether plaintiff is in a manic or depressive state.  Finally, Ms. Sajor is one of many therapists with whom plaintiff has treated regularly.  Thus, unlike in cases where the Court has remanded where the ALJ failed to consider explicitly the opinion of the plaintiff's sole therapist, the ALJ considered in detail records from several of plaintiff's other mental health professionals, including Mr. Canton, Dr. Slesynski, Dr. Ghaemi, Dr. Rigueur, Dr. Poreba, and Dr. Kim.  See generally Pickett v. Colvin, No. 3:13-CV-0776

(LEK), 2015 WL 5749911, at *8 (N.D.N.Y. Sept. 30, 2015).  Accordingly, the ALJ did not commit reversible error in declining to accord

Plaintiff contends, in a footnote, that the Appeals Council erred by "not explaining what weight it gave to Dr. Keith's retrospective opinions regarding Mr. Zukowski's mental impairments."  Dkt. No. 11 at 33, n.7.  The Appeals Council provided that it "looked at the medical source statement from Robert L. Keith, Ph.D., dated December 18, 2015.  The Administrative Law Judge decided your case through September 25, 2015.  This information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before September 25, 2015."  T 2. Courts in this Circuit have noted that a "retrospective medical diagnosis by a subsequent treating physician is entitled to controlling weight when no medical opinion in evidence contradicts a doctor's retrospective diagnosis finding a disability."  See, e.g., Campbell v. Astrue, 596 F. Supp. 2d 446, 452 (D. Conn. 2009); Dousecwicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981) ("[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment.").  Although plaintiff's counsel indicates that Dr. Keith's opinion is a retrospective one, there is no evidence supporting a conclusion that Dr. Keith's opinion is retrospective.  T at 6.  The medical source statement form provided the following instruction: "[t]he limitations are assumed to be your opinion regarding current limitations only.  However, if you have sufficient information to form an opinion within a reasonable degree of medical or psychological probability as to past limitations, on what date were the limitations you found above first present."  Id. at 8.  In response to this question, Dr. Keith answered,

"NA," which the Court reasonably understands to mean "not applicable."  Id.  Further,

Dr. Keith indicated that his responses were based on "clinical interview" and

"observations" made based on plaintiff's "statement of *current* abstinence from alcohol,"

further suggesting that his opinion is current, rather than retrospective.  Id. at 7-8

(emphasis added).  Accordingly, the Appeals Council did not commit error in concluding

that Dr. Keith's opinion was about the time period following September 25, 2015.  T at

2.

     In summary, to the extent that plaintiff points to evidence in the transcript that

reasonably might support a different conclusion in his favor, "whether there is

substantial evidence supporting the appellant's view is not the question" on appeal.

Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).  Accordingly, for the

reasons stated above, the ALJ did not err in declining to accord significant weight to the

opinions of treating physicians Dr. Sleszynski, Dr. Rigueur, Dr. Ghamei, Dr. Kim, and

Dr. Lutinski; therapists Mr. Canton, Mr. LaMora, and Ms. Sajor; or nurse Ms. Mills, and

the Appeals Council did not err in its assessment of Dr. Keith's opinion.[17]


### 2.  Did the ALJ Properly Determine that Plaintiff's Substance Abuse was a Contributing Material Factor?

     Plaintiff argues that "the record does not conclusively establish that Mr.

Zukowski's bipolar disorder would improve to the point of nondisability in absence of

---

[17] As indicated, the undersigned assesses the ALJ's review of Dr. Poreba and consultative examiner Dr. Efobi in the following section as plaintiff challenges these opinions as they relate to the materiality finding.

alcohol dependence" and contends that the "record shows a long history of bipolar disorder, with great lability, not related to alcohol." Dkt. No. 11 at 35. Relatedly, plaintiff argues that the ALJ erred in giving "controlling weight"[18] to treating physician Dr. Poreba "who saw Mr. Zukowski for medication management a total of four times[19] at BHSN" insofar as Dr. Poreba concluded that his "alcohol abuse was the most probable cause of his depressive cycle." Dkt. No. 11 at 33. Plaintiff also argues that the ALJ erred in giving "controlling weight" to non-examining state agency consultant Dr. Efobi, "the only source who opined that Mr. Zukowski would be able to work if he stopped drinking." Dkt. No. 11 at 33. In response, the Commissioner argues that plaintiff "bears the burden of proving that his alcohol abuse was not material to his disability" and that he "erroneously contends that there must be conclusive evidence establishing the ALJ's finding that alcohol abuse was a material factor." Dkt. No. 18 at 14. The Court concludes that substantial evidence supports the ALJ's conclusion that plaintiff's limitations would be mild absent his alcohol use.

As set forth above, the ALJ determined that plaintiff's severe impairments did not meet or medically equal a listing, but at step five found that plaintiff's ability to perform work at all exertional levels had been "compromised by non-exertional limitations from all of the impairments, including the substance abuse disorder." T 25. The ALJ determined that plaintiff's "inability to understand and execute simple instructions on no

---

[18]   The Court notes that the ALJ did not state the weight he accorded to Dr. Poreba's opinion. See T 24.

[19]   It appears that Dr. Poreba treated plaintiff on five occasions. T 419, 492, 493, 494, 495.

more than an occasionally [sic] basis represents a marked erosion of the occupational base at any exertional level," and that if plaintiff ceased alcohol use, he would still "experience deficits in concentration and attention." Id. at 25-26. As the ALJ determined that plaintiff would not be able to perform work at any level, he then determined whether his alcoholism was a contributing factor material to the determination of disability. See 20 C.F.R. § 404.1535. The ALJ determined that if plaintiff stopped substance abuse, his remaining impairments still would not meet or medically equal a listing. T 26. The ALJ concluded that, as to activities of daily living, plaintiff would have no restrictions if substance abuse ceased as, "even when abusing alcohol, the claimant engages in a wide array of daily activities." Id. He concluded that plaintiff would have "mild difficulties" with social functioning if alcohol use were stopped, noting that Dr. Efobi concluded that plaintiff would have mild difficulties in this area when sober. Id. The ALJ next determined that plaintiff would have "moderate difficulties" in concentration, persistence, and pace, observing that during his examination with Dr. Hartman, plaintiff was "able to do serial counting, simple calculations and serial threes with minimal difficulty," and that Dr. Hartman concluded that plaintiff "has a fair ability to maintain attention and concentration." Id. Further, the ALJ noted Dr. Efobi's conclusion that plaintiff "would have no more than mild difficulty in this area." Id. The ALJ also noted Dr. Hartman's assessment that plaintiff would have "moderate difficulty relating to others and tolerating stress," but that such "restriction is applicable when the claimant is abusing alcohol" and "when sober, the claimant exhibits no more than mild limitations in these areas." Id. Similarly, the ALJ noted Dr.

41

Slesynski's opinion that plaintiff had "marked to extreme problems understanding and carrying out even simple instructions" and that plaintiff's "ability to interact appropriately is extremely limited." Id.  Finally, the ALJ referenced plaintiff's testimony regarding lack of focus, confusion, and difficulty sustaining concentration," along with his testimony that he "now drinks minimally[.]"  Id. at 26, 29.  The ALJ also assessed whether the paragraph C criteria would be satisfied were plaintiff to abstain from alcohol and concluded that they would not.  Id. at 27.   The ALJ indicated that the record demonstrates "no evidence" that plaintiff ever demonstrated the paragraph C criteria. Id. at 23, 27.

Primarily at issue is plaintiff's ability to "understand and execute simple instructions on no more than an occasionally [sic] basis," as it is this limitation the ALJ claimed would prevent plaintiff from engaging in work at any exertional level, and plaintiff's attention and concentration, as the ALJ concluded that plaintiff would still experience "deficits" in absence of alcohol abuse.  T 25-26.  Contrary to plaintiff's suggestion otherwise, Dkt. No. 11 at 35, it is plaintiff's burden to prove that his alcohol use disorder is not material to his disability.  See Cage, 692 F.3d at 120, 122-24; SSR 13-2p, 2013 WL 621536, at *4 ("When we apply the steps of the sequential evaluation a second time to determine whether the claimant would be disabled if he or she were not using drugs or alcohol, it is our longstanding policy that the claimant continues to have the burden of proving disability throughout the DAA materiality analysis.").  In contending that plaintiff's alcohol use disorder is not material to his disability, plaintiff cites only to his "long history of bipolar disorder, with great lability," that no provider has

"ever noted that he appeared to be inebriated when they treated him," and that upon his admission to the emergency room in February 2012, plaintiff's blood alcohol content was .023, which plaintiff indicates "is much less than the .08 level for DWI." Dkt. No. 11 at 35 (citing T 266); Dkt. No. 33 at 35, n.9.

As the Commissioner notes, during plaintiff's hospital admissions – presumably a time during which he abstained from alcohol – plaintiff was released with improved functioning. Similarly, it was during plaintiff's hospitalization in 2011 when the treating physician doubted plaintiff's bipolar diagnosis and questioned his allegations of mania. T 384-85. Indeed, as the ALJ noted, plaintiff voiced suicidal ideations while under the influence of alcohol. T 28.[20] As this Court has noted, although an ALJ need not point to periods of abstinence, "'[t]he Second Circuit has held that a comparison of medical opinions during a period when a claimant was using alcohol to 'periods of sobriety,' even brief ones such as during hospitalization, constitutes substantial evidence to support a determination that a claimant would not be disabled were she to stop using drugs or alcohol." Rowe v. Colvin, 8:15-CV-652 (TWD), 2016 WL 5477760, at *8 (N.D.N.Y. Sept. 26, 2016) (quoting Cage, 962 F. 3d at 127, DiBenedetto, 2014 WL 1154093, at *3); see also SSR 13-2p, SSR 13-2p, 2013 WL 621536, at *4.

Further, acceptable medical sources have the existence of plaintiff's continued

---

[20] The ALJ cites exhibit 8F, which is plaintiff's outpatient discharge plan from Conifer Park from 2007. However, this appears to be a typographical error, as the following exhibit, exhibit 9F, is plaintiff's admission records from Champlain Valley Physicians Hospital Medical Center wherein plaintiff was psychiatrically hospitalized in 2007 after he made a suicidal statement. T 321-27. It is within this record that it was noted that plaintiff's suicidal ideation occurred while under the influence of alcohol. Id. at 329. It is also noted that this hospitalization occurred before plaintiff's alleged onset date. However, an ALJ may consider records from outside of the alleged onset date. 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record . . . .").

alcohol abuse, and one treating provider and one medical expert concluded that plaintiff's symptoms would not be severe in absence of his alcohol use.  First, treating provider Dr. Poreba noted on September 9, 2014 that plaintiff's "[m]ental status is little changed over time with the patient continuing to minimize his alcohol dependence and in fact today exhibiting outright denial: [']I absolutely do not believe it is a problem in any way . . . ['], after referring to 'delusions and hallucinations' he's been having."  T 491.  Dr. Poreba observed that "[w]hat the patient is actually describing are moments of depersonalization, previously noted, lapses in memory and/or recollections of other relationships he was in . . . Previously referred to as jealousy ruminations."  Id.

The ALJ noted that Dr. Poreba reported that plaintiff's "alcoholism was the most probable cause of the claimant's depression" and noted plaintiff's September 2014 visit wherein he stated that he did not believe alcohol dependency was a problem.  T at 24.  Similarly, nonexamining agency expert Dr. Efobi, who reviewed the medical records, concluded that plaintiff's alcohol use disorder "precipitates and perpetuates" plaintiff's "mood disorder symptoms" and if plaintiff were to fully abstain from alcohol, Dr. Efobi's opined limitations for plaintiff – discussed above – would be mild.  T 833.  The ALJ was entitled to rely on Dr. Poreba and Dr. Efobi's opinions.  Cf. Wettlaufer v. Colvin, 204 F. Supp. 3d 266 (W.D.N.Y. 2016) (noting that "an ALJ may find that drug or alcohol abuse is a contributing factor, even where the record does not contain a medical opinion predicting the claimant's impairment in the absence of the substance abuse[.]"); see Herb v. Colvin, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 11, 2015) ("It is well-established that the report of a consultative examiner may serve as substantial

evidence upon which the ALJ may base his decision.") (citation omitted).

The only medical evidence plaintiff offers that arguably directly counters the opinions of Dr. Poreba and Dr. Efobi are those of Mr. Canton and Mr. LaMora. However, despite plaintiff's claims to Mr. Canton and Mr. LaMora that he had abstained from drinking or did not have a "problem with alcohol," the ALJ observed that the record demonstrated otherwise. Dkt. No. 11 at 33. Substantial evidence supports the ALJ's conclusion. The ALJ noted that in October 2013, Mr. LaMora, Champlain Valley Family Center Outpatient Clinic Director, in a letter to plaintiff's probation officer indicated that plaintiff attended a psychoactive substance use assessment in March through June 2013 and the "primary result of this assessment was no recommendation for any level of substance use disorder treatment at this time." T 28, 772, 873.[21] However, as the ALJ observed, id. at 28, review of the Champlain Valley records from that time period indicate that plaintiff reported drinking only one to two glasses of wine on one to two occasions *per week*, in contrast with his reports to other medical providers at around that same time. Id. at 774. The ALJ specifically noted that, two weeks later, plaintiff reported to consultative examiner Dr. Hartman that he drinks four to six beers a day, four to five times per week. Id. at 28. The ALJ also noted that in June 2014, plaintiff reported drinking four to eight beers per night. Id.

Similarly, in plaintiff's intake records from Champlain Valley, plaintiff reported that drinking has "no affect" on his relationship with his significant other, that he does not

---

[21] Mr. LaMora sent plaintiff's counsel a nearly identical letter regarding the same assessment, though it is dated December 17, 2015. T 873.

feel he needs to cut down on drinking, that there has never been anyone in his life who has criticized him for his drinking, that he has never felt guilty about drinking.  T 777-78. Plaintiff also denied several mental health symptoms during this assessment, indicating that he has not felt depressed or sad for most of the past two weeks or two years, and reporting that he has not had a time in his life "when you were feeling up, hyper or so full of energy or full of yourself that you got into trouble or other people thought you were not your usual self."  Id. at 779.  However, plaintiff reported to medical providers at the time that he experienced manic episodes and that he became involved in his legal problems after/during manic episodes, experienced obsessive thoughts, and anxiety – all symptoms that he denied during the Champlain Valley assessment.[22]  Thus, the ALJ was entitled to discount Mr. LaMora's letter as the conclusion that plaintiff did not need substance abuse treatment was based on plaintiff's own self reporting, which does not appear to have been forthcoming as records from around the time period of plaintiff's assessment demonstrate that plaintiff was drinking on a more significant and frequent basis.  See, e.g., id. at 851 (dated July 25, 2015, concluding that plaintiff suffers from alcohol dependence, was told not to drink, reports that he "sporadically drinks beer").  Thus, insofar as plaintiff reports that the ALJ should have relied on Mr. LaMora's conclusion that plaintiff did not need treatment for alcoholism, the Court disagrees.  Dkt. No. 11 at 33.

---

[22]    The page is partially cut off in the administrative transcript, but in the number of "yes" responses section," it is clear that plaintiff denied several mental health symptoms, such as feeling intensely anxious, worrying excessively, being bothered by thoughts he "couldn't get rid of" that were unwanted," "intrusive," "distressing."  T 780-82.

Similarly, although Mr. Canton provided in March 2015 and again in December 2015 that plaintiff's symptoms are not precipitated by his alcohol use, substantial evidence in the record rebuts this conclusion.  At a September 10, 2015 visit, plaintiff reported to Dr. Slezyneski "that he has not had anything to drink this calendar year," and his girlfriend confirmed.  Id. at 850.  However, in February 2015, plaintiff reported drinking eight to nine beers per day.  Id. at 764.  On May 19, 2015, plaintiff reported that he "has reduced his alcohol intake further," suggesting he was still consuming alcohol to some degree, and Dr. Slezyneski "had a long discussion about the need to abstain from alcohol in view of the fact that the Depakote is also metabolized by the liver."  T 854.  Also, a July 6, 2015 report from Dr. Stephen Williams at BHSN notes that although plaintiff "has been instructed not to use alcohol," "he continues sporadically to drink beer" concludes that plaintiff "clearly" suffers from bipolar disorder and alcohol dependence, and "encouraged [plaintiff] in the strongest possible terms to cease all use of alcohol."  Id. at 851-52.

Collectively, the ALJ presented "relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion" that plaintiff's difficulties with understanding and executing simple instructions and attention and concentration would be no more than mild if plaintiff were to abstain from alcohol use.  See Cage, 692 F.3d at 127 (quoting Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010).  Plaintiff did not meet his burden of demonstrating that his alcohol use was not a material factor.  Accordingly, the ALJ committed no error in concluding that plaintiff's substance use disorder was a contributing material factor to the determination of disability, and that

plaintiff would be able to perform his past relevant work in absence of his alcohol use.

### 3. Credibility

Plaintiff argues that the ALJ erred "in not crediting Mr. Zukowski's testimony regarding his use of alcohol."  Dkt. No. 11 at 35.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii) provide that if the claimant's allegations of pain and limitations are not supported by objective medical evidence, the ALJ must consider the following factors in assessing the claimant's credibility:

> (i) [Claimant's] daily activities;
>
> (ii) The location, duration, frequency and intensity of [Claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Claimant's] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication [Claimant] receive[s] or ha[s] received for relief of ... pain or other symptoms;
>
> (vi) Any measure [Claimant] use[s] or ha[s] used to relieve . . .  pain or other symptoms;
>
> (vii) Other factors concerning [Claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

After considering the objective medical evidence, the claimant's demeanor and activities, subjective complaints, as well as any inconsistencies between the medical evidence and the claimant's subjective complaints, an ALJ may accept or disregard the

48

claimant's subjective testimony as to the degree of impairment.  See Saxon v. Astrue, 781 F. Supp.2d 92, 105 (N.D.N.Y. 2011) (citations omitted); see also Howe-Andrews v. Astrue, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007) (citation omitted); Martone, 70 F.Supp.2d at 151 (citation omitted).  If the ALJ finds that the claimant's pain contentions are not credible, however, he or she must state his or her reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  Young v. Astrue, 05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y.1987)).  An ALJ who rejects the subjective testimony of a claimant "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'"  Melchior v. Apfel, 15 F. Supp.2d 215, 219 (N.D.N.Y.1998) (quotation and other citation omitted).  Failure to follow this standard constitutes legal error.  See Horan v. Astrue, 350 F. App'x 483, 484 (2d Cir. 2009) (summary order).

Here, the ALJ concluded that plaintiff was "credible concerning the following symptoms and limitations: difficulties with focus and concentration and an inability to get along well with others."  T 24.  Further, the ALJ concluded that plaintiff's testimony at the hearing was not credible.  Id. at 29.  The ALJ noted that plaintiff testified that "he now drinks minimally," but observed that "subsequent reports document continued alcohol use."  Id.  Further, the ALJ noted that, "[a]lthough claimant reports that he suffers from disabling symptoms, he reported to treating sources in February 2013 that

he continues to do construction jobs on the side."  Id.

The Court finds no error in the ALJ's credibility assessment.  As detailed in the

above section, plaintiff's reports to medical providers varied greatly.  To some providers,

he indicated that he had abstained from alcohol and did not feel that his use of alcohol

was a problem or that it impacted his life.  However, he reported high and/or daily use of

alcohol to other providers.  Further, plaintiff's claims of extreme limitations often are

inconsistent with his clinical examinations.  As Commissioner points out, in contrast to

plaintiff's argument that no examiner has doubted his symptoms, the treating

emergency room physician Dr. Hoskin noted that plaintiff did not appear particularly

manic or depressed, and opined that plaintiff may have a secondary gain from a

diagnosis of bipolar disorder in an effort to assist him with legal troubles.  T 384-85.  It is

also noted that recent treatment notes from the University of Vermont Medical Center,

dated February 24, 2015, call into question plaintiff's bipolar diagnosis and the severity

of his symptoms.  Id. at 767 ("[D]iagnostically, it is not clear that the patient has bipolar

mood disorder.  His symptomology is most prominent for mood dysregulation,

depressed mood, alcohol use disorder (precontemplative), social anxiety and anger

issues.  Though he does endorse elements of many disorders such as Bipolar, OCD,

PTSD, it is not clear that he meets diagnostic criteria for any of these" and noting that

plaintiff described experiencing manic episodes immediately before 2011 arrest, but

was not observed to be manic or depressed in hospital and hospital admission noted

that plaintiff reported no manic symptoms in a few months).  Similarly, as discussed

supra, plaintiff's reports with his treating providers also did not often reflect the extreme

limitations he opined.  For example, although Dr. Rigeur noted marked and extreme limitations, he observed that plaintiff was "spontaneous and oriented" that his thoughts were "organized and relevant," and that plaintiff had "good insight" into his illness.  Id. at 30.  Similarly, Dr Sleszynski reported that plaintiff was "doing well" and that his affect was only "mildly constricted."  Id. at 854, 55.  Dr. Kim observed that plaintiff was "stable," "calm," had good eye contact, had a "bright" and "full" affect, and a absence of anxiety, agitation, blunting, and constriction.  Id. at 283, 286-66.  Dr. Ghaemi reported plaintiff as being mildly depressed, with logical thoughts and no suicidal ideation.  Id. at 20.

The ALJ committed no error in concluding that plaintiff's statements about his limitations beyond his difficulties with concentration, focus, and getting along with others were not credible.  T 24.  "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted).  If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).  The ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility which entitles the ALJ's assessment to considerable deference.  See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y. 1985)); Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  Furthermore,

"[w]here, as here, the Commissioner's decision 'rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner.'" <u>Schlichting v. Astrue</u>, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (quoting <u>White v. Comm'r</u>, 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008)).

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff Stephen Edward Zukowski's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:          March 13, 2018
                Albany, New York

Christian F. Hummel
U.S. Magistrate Judge